## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **MARTY BROWN,** | ) | |
|     **Plaintiff** | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **v.** | ) | **Case No. 7:13cv00553** |
| | ) | |
| **DONALD S. CALDWELL, et al.,** | ) | |
|     **Defendants** | ) | |

This case is before the court on the Motion to Dismiss filed on behalf of defendants Donald S. Caldwell, ("Caldwell"), and John McNeil, ("McNeil"), (Docket Item No. 18), and on the Motion To Dismiss filed by defendant Sergeant Kevin D. Assenat, ("Sgt. Assenat"), (Docket Item No. 21), (collectively, "Motions"). The Motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have not requested a hearing on the Motions, which are now ripe for decision. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

### I.     Facts & Procedural History

The plaintiff, an inmate housed at the Federal Medical Center in Butner, North Carolina, ("FMC Butner"), originally filed his Complaint on January 31, 2013, in the Eastern District of North Carolina, (Docket Item No. 1). Thereafter, the case was transferred to this court on November 21, 2013, pursuant to 28 U.S.C. §§ 1391(b), 1406(a). (Docket Item No. 9). Brown filed this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

U.S. 388 (1971).[1]   He named as defendants, Caldwell, the Commonwealth's Attorney for the City of Roanoke, and McNeil, an Assistant Commonwealth's Attorney for the City of Roanoke, in their individual and official capacities, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983, and seeking damages and injunctive relief.  He also sues Sgt. Assenat, a sergeant with the Roanoke City Police Department's Warrant Service Unit, in his official capacity only, based on the same violations.  In particular, Brown alleges that the defendants held two criminal arrest warrants in the Commonwealth's Attorney's Office and the police department without properly informing the court of their existence, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.  Brown further alleges that the defendants' actions failed to comply with the provisions of the Interstate Agreement on Detainers Act, ("IADA"), and violated his right to a speedy trial under the Sixth Amendment to the United States Constitution.

In his Complaint, Brown alleges that, on December 7, 2009, Sgt. Assenat, of the Roanoke City Police Department's Warrant Service Unit, provided two criminal arrest warrants to the Bureau of Prisons, ("BOP"), and requested that a detainer be placed on Brown based on the existence of these warrants.  (Docket Item No. 1-1 at 1.)  The warrants were based on charges of malicious wounding and use of a firearm in the commission of a felony.  On November 24, 2010, Brown filed an IADA Petition with the BOP's Records Department. (Docket Item No. 1-1 at 2.) The Commonwealth's Attorney's Office for the City of Roanoke received this Petition on December 15, 2010, as evidenced by a certified mail receipt.  (Docket Item No. 1-1 at 3.)  Also on December 15, 2010, a deputy clerk

---

[1] A *Bivens* action allows damages suits to be maintained against federal officials for violations of the United States Constitution.

for the General District Court for the City of Roanoke, signed a certified mail receipt for the IADA Petition. (Docket Item No. 1-1 at 3). On May 4, 2011, Terri Campbell, Correctional Systems Officer at FMC Butner, sent a letter to Caldwell, advising that the 180-day time limitation under Article III of the IADA would lapse on June 15, 2011. (Docket Item No. 1-1 at 4.) On July 27, 2012, a deputy clerk for the General District Court for the City of Roanoke responded to a Request For Information by Brown's Unit Manager, stating that the court did not have any records relating to the warrants or any charges pending against Brown. (Docket Item No. 1-1 at 5.) Brown now has submitted the same letter from this deputy clerk, but containing handwritten notes which state that the letter should not have been sent because there were two active warrants, and the Commonwealth's Attorney's Office wanted the detainer to remain in place. (Docket Item No. 35-1.)

Brown alleges that the Roanoke City Warrant Service Unit and the Commonwealth's Attorney's Office for the City of Roanoke failed to inform the General District Court for the City of Roanoke of the warrants, which hinders him from addressing a grievance, in violation of his due process rights under the United States Constitution. Brown further alleges that McNeil advised A. Little, of the FMC Records Department, on September 12, 2012, long after the 180-day time limitation under the IADA had lapsed, "that the detainer is to remain in place." He contends that this proves that the Commonwealth's Attorney's Office had no intention of complying with the provisions of the IADA or the Sixth Amendment right to a speedy trial.

Brown requests that the court issue a declaratory judgment, stating that the actions of Caldwell, McNeil and Sgt. Assenat violated his constitutional rights. He further requests that the court issue an injunction for the Commonwealth's

Attorney's Office for the City of Roanoke to comply with Article III of the IADA, by dismissing the state warrants / detainer with prejudice. Brown also requests that the court award damages against Sgt. Assenat in the amount of $5,000 for emotional injuries sustained as a result of his refusal to "confirm or confabulate his intentions" to the courts. He further requests that the court award damages against Caldwell in the amount of $1,000 for emotional injuries resulting from his failure to respond to or comply with IADA provisions. He requests that the court award damages against McNeil in the amount of $10,000 for keeping records from the courts and deliberately refusing to comply with the provisions stipulated within the IADA, which violates his Sixth and Fourteenth Amendment rights. Lastly, Brown requests that the court award punitive damages against Sgt. Assenat in the amount of $2,500, against Caldwell in the amount of $1,000 and against McNeil in the amount of $5,000.

## II.    Analysis

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atl. Corp. v. Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Additionally, the Court established a "plausibility standard," in which the pleadings must allege enough to make it clear that relief is not merely conceivable, but plausible. *See Twombly*, 550 U.S. at 555-63.

The Court further explained the *Twombly* standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. …
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Internal citations omitted).

Thus, for the purpose of ruling on the Motions, this court will assume that all well-pleaded factual allegations contained in the plaintiff's Complaint are true, and all reasonable inferences will be drawn in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In deciding a Rule 12(b)(6) motion, the court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quotation omitted).

### A. *Official Capacity Claims & Eleventh Amendment Immunity for Defendants Caldwell & McNeil*

Brown sues Caldwell and McNeil in both their official and individual

capacities. These defendants argue that Brown's claims against them for damages in their official capacities are barred by Eleventh Amendment immunity. For the reasons that follow, I agree.

Pursuant to the Eleventh Amendment, the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state. …" U.S. CONST. amend. XI. However, the United States Supreme Court has interpreted the sovereign immunity conferred by the Eleventh Amendment to extend beyond the Amendment's literal terms. *See Harbison v. Commonwealth of Virginia*, 2010 WL 3655980, at *3 (E.D. Va. Aug. 11, 2010). In particular, the Supreme Court has interpreted it to bar suits by citizens against their own state in federal court. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890). "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Harbison*, 2010 WL 3655980, at *3 (citing *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Moreover, courts have extended this Eleventh Amendment immunity to state agencies considered "arms of the state" and state employees acting in their official capacity. *See Plaster v. Brown*, 2005 WL 3021961, at *3 (W.D. Va. Nov. 8, 2005) (citing *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996); *Dawkins v. Craig*, 483 F.2d 1191, 1194 (4th Cir. 1973)).

In *Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456 (4th Cir. 1987), the Fourth Circuit outlined a nonexclusive four-part test to determine whether a state official is immune under the Eleventh Amendment. The first, and most important, consideration is whether the state treasury will pay any judgment that might be awarded. *See Ram Ditta*, 822 F.2d at 457. Further, the

court is to consider whether the state entity exercises a significant degree of autonomy from the state, whether it is involved with local versus state-wide concerns, and finally, how it is treated as a matter of state law. *See Ram Ditta*, 822 F.2d at 457-58. Thereafter, in *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994), the Supreme Court announced that Eleventh Amendment inquiries should be guided by its twin reasons for being: (1) preventing judgments from depleting state treasuries; and (2) maintaining the integrity retained by each state in our federal system. The *Hess* Court considered "indicators" of state entities, such as whether local or state governance controlled the entity, whether the implementing legislation characterized the entity as a state agency and how state courts have ruled on the issue, whether the entity's functions have traditionally been regarded as state or local and whether a state has financial responsibility for the entity. The Court reasoned that when these factors, which echo those articulated in *Ram Ditta*, point in opposite directions for purposes of determining Eleventh Amendment immunity, a court must focus on "the impetus for the Eleventh Amendment: the prevention of federal-court judgments that must be paid out of a State's treasury … Accordingly, Courts of Appeals have recognized the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations." 513 U.S. at 48 (internal citation omitted). Thus, *Hess* established that, in making a determination as to entitlement to Eleventh Amendment immunity, a number of factors must be considered, but that *Ram Ditta* was correct that the state treasury factor is the most important.

Two years later, in *Harter*, the Fourth Circuit reiterated that the most important factor is determining whether the state treasury will pay any resulting judgment. *See* 101 F.3d at 338-39 (citing *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *Gray v. Laws*, 51 F.3d 426, 433 (4th Cir. 1995); *Bockes v. Fields*,

999 F.2d 788, 790-91 (4th Cir. 1993), *cert. denied*, 510 U.S. 1092 (1994); *Ram Ditta*, 822 F.2d at 457)). Recognizing this as the dominant inquiry in the courts of appeals, and "the correct legal theory," in *Hess*, the Supreme Court noted that a finding that the state treasury will pay the judgment is usually "dispositive." 513 U.S. at 49, 51. In light of the importance of the state treasury factor, the Fourth Circuit held in *Bockes*, and reiterated in *Gray*, that if the state treasury will pay the judgment, the entity is immune from suit, and the other *Ram Ditta* factors need not be considered. *See Gray*, 51 F.3d at 433-34 (citing *Bockes*, 999 F.2d at 790-91). Therefore, when deciding if an officer or entity enjoys Eleventh Amendment immunity, a court must first determine whether the state treasury will be affected by the lawsuit. If the answer is "yes," the officer or entity is immune under the Eleventh Amendment. *See Harter*, 101 F.3d at 340 (citing *Bockes*, 999 F.2d at 790-91). If the answer is "no," the most decisive factor weighs against Eleventh Amendment immunity, but the court also should consider the other three *Ram Ditta* factors. *See Harter*, 101 F.3d at 340.

In Virginia, the Commonwealth's Attorney is a constitutional officer of the Commonwealth. VA. CONST. art. VII, § 4; VA. CODE ANN. § 15.2-1600 (2012 Repl. Vol.); *Burnett v. Brown*, 72 S.E.2d 394 (Va. 1952) ("Attorneys for the Commonwealth are constitutional officers."). The Commonwealth of Virginia funds a risk management plan for constitutional officers, which is administered by the Department of the Treasury's Division of Risk Management, ("Division"). *See Plaster*, 2005 WL 3021961, at *3 (citing VA. CODE ANN. § 2.2-1839). The plan protects against liability imposed by law for damages against any constitutional officers of the Commonwealth. *See Plaster*, 2005 WL 3021961, at *3 (citing VA. CODE ANN. § 2.2-1839). The Division assumes sole responsibility for plan management, compliance and removal, and the State Compensation Board must

approve constitutional officers' participation in the risk management plan. *See Plaster*, 2005 WL 3021961, at *3 (citing VA. CODE ANN. § 2.2-1839). The Division provides for the legal defense of participating entities, and a trust fund is established for payment of claims covered under such plan. *See Plaster*, 2005 WL 3021961, at *3 (citing VA. CODE ANN. § 2.2-1839). Funds are invested into this trust according to Virginia Code Annotated § 2.2-1806, which provides for the investment of funds in the state treasury. *See* VA. CODE ANN. § 2.2-1839. Thus, the Virginia Department of the Treasury is responsible for paying any judgment that may be awarded in this action, as claims are paid from a trust funded by the state treasury. *See Plaster*, 2005 WL 3021961, at *3. Therefore, because any judgment that might result against either defendant Caldwell or McNeil would be paid out of the state treasury, I recommend that the court find that both Caldwell and McNeil are immune from suit in their official capacities under the Eleventh Amendment, and I further recommend that Brown's claims against Caldwell and McNeil in their official capacities be dismissed. Given this disposition, I find that the court need not proceed with any further analysis of the three remaining *Ram Ditta* factors.

While not persuaded by it, I do note Brown's argument that Eleventh Amendment immunity is not applicable under the circumstances because a deprivation of due process voids such immunity. Brown cites Virginia Code § 53.1-210, *Tully v. Johnson*, 2011 U.S. Dist. LEXIS 18062 (E.D. Va. Feb. 22, 2011), and *Kalina v. Fletcher*, 522 U.S. 118 (1997), for this proposition. None of these authorities support his proposition. First, as the defendants note in their reply, § 53.1-210 is not applicable to this issue, as it is a codification of the IADA and, as will be discussed herein, applies only to detainers "based on untried indictments, informations or complaints." That is not the case here. Next, in *Tully*,

the district court denied a petition for a writ of habeas corpus as procedurally barred, dismissing all of the petitioner's claims. Again, this set of facts does not apply here. Lastly, in *Kalina*, the Supreme Court held that a prosecutor was not entitled to immunity in presenting a judge with a complaint and supporting affidavit to establish probable cause for an arrest because this is not a traditional function of an advocate. Instead, the Court noted that any competent witness could have performed this function. *See Kalina*, 522 U.S. at 129-30. In the instant case, defendants Caldwell and McNeil were acting in their roles as advocates. Despite Brown's claim that defendant McNeil was acting as the complaining witness for the two arrest warrants at issue, defendants Caldwell and McNeil deny the same. Brown has supplied the court with no evidence to that effect, and the arrest warrants themselves do not support such an assertion.

It is for all of these reasons that I recommend that the court find that both Caldwell and McNeil are immune from suit in their official capacities under the Eleventh Amendment, and I further recommend that Brown's claims against them in such capacities be dismissed.

### B. Absolute Immunity for Defendants Caldwell & McNeil

To the extent that Brown is asserting his claims against defendants Caldwell and McNeil in their individual capacities, I find that such claims also must fail and that Caldwell and McNeil are entitled to absolute immunity in their roles as advocates for the Commonwealth. In *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993), the Supreme Court recognized that some officials perform special functions which deserve absolute protection from damages liability. However, the official seeking immunity bears the burden of showing that such immunity is

justified.  *See Burns v. Reed*, 500 U.S. 478, 486 (1991).  Courts have adopted a functional approach to the question of absolute immunity, focusing on the nature of the function performed and not the identity of the actor who performed it.  *See Buckley*, 509 U.S. at 269.  In *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976), the Supreme Court used this functional approach and held that a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties.

The *Imbler* Court held that the threat of § 1983 suits would otherwise undermine the performance of a prosecutor's duties and perhaps jeopardize the ultimate fairness of the entire system.  *See* 424 U.S. at 424, 427.  To deny a prosecutor such immunity would disserve the broader public interest.  *See Imbler*, 424 U.S. at 427.  However, as the Court admits, this leaves a genuinely wronged defendant without civil redress against a prosecutor whose dishonest actions deprived the defendant of his liberty.  *See Imbler*, 424 U.S. at 427.  The *Imbler* decision affords prosecutors absolute immunity while initiating prosecution and presenting the state's case at trial.  *See Plaster*, 2005 WL 3021961, at *4.  Thus, the boundaries of the *Imbler* decision extend only as far as initiating a prosecution and conduct in the courtroom.  *See Plaster*, 2005 WL 3021961, at *4 (citing *Buckley*, 509 U.S. at 272).  In sum, actions taken by a prosecutor while preparing for the initiation of judicial proceedings, which occur in his role as an advocate for the state, are entitled to absolute immunity.  *See Plaster*, 2005 WL 3021961, at *4 (citing *Buckley*, 509 U.S. at 273).  Stated differently, absolute immunity protects decisions integrally related to the charging process.  *See Springmen v. Williams*, 122 F.3d 211, 212 (4th Cir. 1997).  In *Springmen*, the Fourth Circuit held the decision as to whether and when to prosecute falls squarely under the Supreme Court's decision in *Imbler* and is entitled to absolute immunity.  *See* 122 F.3d at

213. Here, I find that the act of deciding whether to serve criminal arrest warrants upon an individual most certainly constitutes a decision as to whether and when to prosecute. It is difficult to imagine conduct more intimately related to the judicial process than a prosecutor's decision to proceed with the prosecution. *See Springmen*, 122 F.3d at 213. Therefore, I recommend that the court find that Caldwell and McNeil are entitled to absolute immunity, and I further recommend that the court dismiss all of Brown's claims against them. *See Plaster*, 2005 WL 3021961, at *5 (citing *Springmen*, 122 F.3d at 213).

While I am not persuaded by the argument, Brown argues that defendants Caldwell and McNeil are not entitled to prosecutorial immunity because such immunity is applicable only when prosecutors "follow the color of law," which, according to Brown, defendants Caldwell and McNeil failed to do. More specifically, Brown argues that, once the detainer was filed, the defendants, in their capacities as Commonwealth's Attorneys, were obligated under the IADA and Virginia Code § 53.1-210 to serve the warrants on him and afford him a speedy trial. However, as the defendants state in their reply, Brown offers no legal authority for this contention. Instead, he offers the type of conclusory statements that are insufficient to overcome a motion to dismiss. Neither Virginia Code § 53.1-210 nor the IADA obligated the defendants to serve the warrants on Brown, and only if the warrants are served do speedy trial considerations come into play.

For all of the above-stated reasons, I recommend that the court find that defendants Caldwell and McNeil are entitled to prosecutorial immunity, and I further recommend that the court dismiss all of Brown's claims against them.

*C. Denial of Fifth Amendment & Fourteenth Amendment Due Process Rights*

Brown also argues that the defendants violated his Fifth and Fourteenth Amendment due process rights by lodging a detainer against him based on the two criminal arrest warrants, but failing to inform the General District Court for the City of Roanoke of their existence. Brown argues that this action, in essence, hindered him from addressing a grievance. Given the recommended disposition above, I will not analyze this issue with regard to defendants Caldwell and McNeil, as I find that they are immune from Brown's claims in their entirety. Under the Fifth Amendment to the United States Constitution, "No person shall … be deprived of life, liberty, or property, without due process of law. …" U.S. CONST. amend. V. Likewise, the Fourteenth Amendment states, in relevant part, that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law. …" U.S. CONST. amend. XIV, § 1. In his Complaint, Brown alleges that the lodging of the detainer hindered him in addressing a grievance. Assuming that Brown is claiming that Sgt. Assenat should have informed the Court of the existence of the warrants so that a trial could be held on the charges contained therein and, by failing to do so, he violated Brown's constitutional due process rights, I disagree. Pursuant to Virginia Code § 19.2-243:

> Where a district court has found that there is probable cause to believe that an adult has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the district court. … If there was no preliminary hearing in the district court, … the commencement of the running of the five … months period[] … shall be from the date an indictment or presentment is found against the accused. … For the purposes of this

section, an arrest on an indictment or warrant or information or presentment is deemed to have occurred only when such indictment, warrant, information, or presentment or the summons or capias to answer such process is served or executed upon the accused and a trial is deemed commenced at the point when jeopardy would attach or when a plea of guilty or nolo contendere is tendered by the defendant. The lodging of a detainer or its equivalent shall not constitute an arrest under this section.

Here, as Sgt. Assenat states in his brief, there has been no finding of probable cause by any court. When Brown made a records information request for a conviction record for malicious wounding or use of a firearm during a felony, a deputy clerk for the General District Court for the City of Roanoke informed him that there was no such record or listing matching the requested information. Despite Brown's recent introduction of the modified version of this letter, as described herein, it merely evidences that the warrants exist and that the Commonwealth's Attorney's Office continued to desire that the detainer remain in place. This letter still does not evidence that any charges were pending against Brown based on the warrants because they were not. Additionally, Brown has not been arrested on these warrants. According to § 19.2-243, an arrest occurs only when the warrant is served or executed upon the accused. Not until Brown filed his brief in opposition to Sgt. Assenat's Motion To Dismiss did he challenge the allegation that the warrants at issue were not so served or executed. However, I find that this late assertion by Brown that at least one of the warrants was, indeed, executed, is directly contradicted by assertions made by Brown in his brief in opposition to defendants Caldwell's and McNeil's Motion to Dismiss and, in any event, is not made in a verified pleading that may be considered, thereby converting the Motions to motions for summary judgment. In particular, Brown now states that on June 29, 2005, he was arrested by law enforcement officials in

North Carolina on the malicious wounding warrant. He further states that he was held in the county jail for two days on this warrant before his father posted a $100,000 bond on his behalf. He alleges that a court date was set, but he skipped bond and avoided apprehension for two years by moving to Georgia. Interestingly, this is the first time that Brown has offered any such information to the court, and in his brief in opposition to the other defendants' Motion to Dismiss, he makes statements that are completely contradictory to the assertion that at least one of the warrants at issue was executed, resulting in his arrest. For example, Brown stated, among other things, that "Defendant McNeil is the [c]omplaining witness for Warrants 770GC-R010419905 and 770GC-R010419906, however when it came time to process these warrants, he realized that there wasn't any probable cause to arrest the Plaintiff. So he then requested that the detainer be placed on the Plaintiff. This detainer now buys time for the Defendants to find probable cause for an arrest." (Complaint at 3.) Additionally, Brown asserted that "[o]nce the Defendants sought the placement of a detainer on the Plaintiff for both warrants, the color of law requires that Plaintiff be afforded his due process rights, i.e. a speedy trial, *a served warrant of arrest*." (Complaint at 3) (emphasis added). Furthermore, Brown asserted as follows in his previous brief in opposition: "Clearly the detainer for [the two warrants at issue] are depriving the Plaintiff of his liberty interest. This deprivation is for a time frame of two years, and the United States constitutional rights of the Plaintiff [are] being violated when the detainer is not *followed by the service of warrants for arrest*. (Complaint at 3) (emphasis added).

In addition to Brown's contradictory assertions made in unverified pleadings, the court notes that he has not filed any separate sworn affidavits under the penalty of perjury regarding this issue, nor any other evidence which the court

may consider on the Motions to corroborate an allegation that either of the arrest warrants at issue was ever executed. In fact, the evidence before the court supports the opposite conclusion, as the copies of the warrants filed do, in fact, reflect that they were not executed. This includes the copies filed by Brown himself. Moreover, there are handwritten notations on the "Detainer Action Letter" stating that on September 19, 2012, McNeil desired that the detainer remain in place and that "[t]here was no record because inmate … not served yet." (Docket Item No. 35-1 at 1.) Likewise, the handwritten notations on the response to Brown's records information request state that "[w]arrants are still active," and "[w]arrants were just not placed in [their] system yet." (Docket Item No. 35-1 at 2.)

For all of these reasons, I find that, despite Brown's last-minute effort to argue that at least one of the warrants was executed against him, resulting in his arrest, such assertion is contradicted by all the other evidence before the court, including that offered by Brown himself. I further find that Brown is bound by the allegations made in his Complaint and may not now come forward with unverified, contradictory allegations, especially in light of the fact that he has not moved to amend his Complaint. That being the case, I recommend that the court find that Brown's Complaint fails to state sufficient facts to support a claim that Sgt. Assenat violated his due process rights by lodging a detainer against him based on the warrants, but failing to inform the General District Court for the City of Roanoke of their existence. I further recommend that the court dismiss this claim against Sgt. Assenat.

Brown also raised allegations for the first time in his briefs in opposition to the Motions that the placement of the detainer resulted in a violation of his due process rights because it deprived him of all rehabilitative efforts, halfway house

placement and receipt of any federal benefits from the Bureau of Prisons, ("BOP"), Drug Program. However, as both of the briefs are unverified pleadings, and Brown has filed no separate sworn affidavits or other pleadings regarding this issue, thereby converting the Motions to motions for summary judgment, I find that Brown is bound by the allegations contained in his Complaint. That being the case, the court will not address this issue on the Motions currently before it.

### D. Denial of IADA and Sixth Amendment Rights

Brown also alleges that Sgt. Assenat violated his rights under the IADA and the Sixth Amendment. Both Virginia and North Carolina[2] have adopted the Interstate Agreement on Detainers Act. *See Locklear v. Commonwealth*, 376 S.E.2d 793, 795 (Va. Ct. App. 1989). Virginia has adopted the IADA at Virginia Code §§ 53.1-210 *et seq.* Pursuant to Article III of Virginia Code § 53.1-210:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint[] … If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. …

---

[2] *See* N.C. GEN. STAT. ANN. §§ 15A-761 *et seq.* (2014).

Brown contends that pursuant to the IADA, he was required to have been tried within 180 days of December 15, 2010, the day the Commonwealth's Attorney for the City of Roanoke received his certified letter requesting a speedy trial. Therefore, he argues that the malicious wounding and using a firearm during the commission of a felony charges should be dismissed with prejudice. I am not persuaded by Brown's argument. By its terms, the IADA is implicated only when a prisoner is subject to an "untried indictment, information or complaint on the basis of which the detainer has been lodged. …" VA. CODE ANN. § 53.1-210 (2013 Repl. Vol.). Courts in Virginia have held that the IADA does not apply where a detainer is based on a felony arrest warrant. *See Locklear*, 376 S.E.2d at 795 (felony arrest warrant not an untried indictment or information, nor is it a complaint); *see also Valentine v. Commonwealth*, 443 S.E.2d 445, 447 (Va. Ct. App. 1994) (holding same). Here, the detainer lodged by the Commonwealth requesting Brown's continued detention by the authorities in North Carolina arose from the arrest warrants for malicious wounding and using a firearm in the commission of a felony. That being the case, I find that the IADA is not implicated, and no violation of the IADA has occurred. I recommend that the court find that Brown has failed to state sufficient facts in his Complaint to allege a claim that Sgt. Assenat violated his rights under the IADA, and I recommend that the court dismiss this claim against Sgt. Assenat.

As for Brown's claim that Sgt. Assenat violated his Sixth Amendment rights by not informing the court of the existence of the felony arrest warrants, I find that argument unpersuasive as well. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. …" U.S. CONST. amend. VI. On its face, the protection of the Sixth Amendment is activated only when a criminal prosecution has begun and extends only to those

persons who have been "accused" in the course of that prosecution. *See United States v. Marion*, 404 U.S. 307, 313 (1971). These provisions do not afford protection to those not yet accused, nor do they require the Government to discover, investigate and accuse any person within any particular period of time. *See Marion*, 404 U.S. at 314-15. The Sixth Amendment right to speedy trial guarantees to a criminal defendant that the Government will move with the dispatch which is appropriate to assure him an early and proper disposition of the charges against him. *See Marion*, 404 U.S. at 313. The *Marion* Court stated that "[t]he framers could hardly have selected less appropriate language if they had intended the speedy trial provision to protect against pre-accusation delay." 404 U.S. at 314-15. The Court also held that the rule "clearly is limited to post-arrest situations" and declined to extend the reach of the Sixth Amendment to the period prior to arrest, stating that "[u]ntil this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer." *Marion*, 404 U.S. at 319, 321. Thus, the Court emphasized that, while invocation of the speedy trial provision of the Sixth Amendment need not await indictment, information or other formal charge, the Amendment *does not reach the period prior to arrest. See Marion*, 404 U.S. at 321.

Here, as in *Marion*, I find that Brown is not an "accused" for purposes of the Sixth Amendment speedy trial guarantee. Brown's Complaint alleged that the felony arrest warrants were never executed against Brown. Therefore, Brown was never arrested for purposes of the Sixth Amendment, and the protections of the Sixth Amendment were never triggered.

For the above-stated reasons, I recommend that the court find that Brown's

Complaint fails to state sufficient facts to allege a claim against Sgt. Assenat for a violation of his Sixth Amendment right to speedy trial, and I recommend that the court dismiss such claim against Sgt. Assenat.

It is for all of these reasons that I recommend that the Motions be granted.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Any judgment against Caldwell or McNeil would be paid by the Virginia Department of Treasury;

2.  Caldwell and McNeil are immune from suit in their official capacities under the Eleventh Amendment;

3.  The act of deciding whether to execute the criminal arrest warrants against Brown constitutes a decision as to whether and when to prosecute;

4.  Caldwell and McNeil are entitled to absolute prosecutorial immunity;

5.  Thus, all of Brown's claims against Caldwell and McNeil should be dismissed;

6.  There has been no probable cause hearing on the charges contained in the criminal arrest warrants, and there are no charges pending against Brown in the General District Court for the City of Roanoke;

7.  Brown has not been "arrested" as contemplated in Virginia Code § 19.2-243;

8.    Brown is not entitled to a trial on the charges contained in the warrants, and his due process rights under Virginia Code § 19.2-243 have not been implicated;

9.    Thus, Brown's claims against Sgt. Assenat for a violation of his due process rights under the Fifth and Fourteenth Amendments should be dismissed;

10.   The IADA does not apply where a detainer is based on a felony arrest warrant;

11.   Thus, Brown's claim against Sgt. Assenat that he violated his rights under the IADA should be dismissed;

12.   The protections of the Sixth Amendment are not triggered until a criminal prosecution has begun, and these protections do not reach the period prior to arrest;

13.   The criminal arrest warrants were never executed against Brown and, thus, he was never arrested for Sixth Amendment purposes; and

14.   Therefore, Brown's claim against Sgt. Assenat that he violated his Sixth Amendment rights should be dismissed.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motions in their entirety and dismiss all of the plaintiff's claims against all of the defendants.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written

objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 18th day of March, 2014.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE